Benjamin FLOURNOY
(Name)

480 ALTA Rd.
(Address)

San Diego CALIF. 92179
(City, State, Zip)

F 25814 - A31-31
(CDCR / Booking / BOP No.)



**FILED**

Jan 8 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ BreanneChandler        DEPUTY

# United States District Court
## Southern District of California

Benjamin FLOURNOY          ,
(Enter full name of plaintiff in this action.)

                  Plaintiff,

v.

R. Acevedo, WARden          ,
A. Rayes, Associate warden,
J. Martine, Facility Captain,
A. Reece, Lieutenant, with 15-More
(Enter full name of each defendant in this action.)
                  Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. **'26 CV0229 WQHDEB**
(To be supplied by Court Clerk)

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.  If you wish to assert jurisdiction under different or additional authority, list them below.

                  yes                                 .

## B. Parties

1. <u>Plaintiff</u>:  This complaint alleges that the civil rights of Plaintiff, Benjamin Flournoy
                                          (print Plaintiff's name)
                 , who presently resides at 480 ALTA Rd
                                    (mailing address or place of confinement)
                               , were violated by the actions of
the below named individuals.  The actions were directed against Plaintiff at R. J. D
R. J. Donovan Correctional-Fce on (dates) 8-28-25, ongoing , and 2020 ngoing
   (institution/place where violation occurred)                       (Count 1)          (Count 2)          (Count 3)

§ 1983 SD Form
(Rev. 8/15)

*See PA # 1*

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant _____ resides in _____,
          (name)                                  (County of residence)
and is employed as a _____. This defendant is sued in
                     (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under
color of law: _____

_____ *See pa #1* _____

_____.

Defendant _____ resides in _____,
          (name)                                  (County of residence)
and is employed as a _____. This defendant is sued in
                     (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under
color of law: _____

_____ *See pa #1* _____

_____.

Defendant _____ resides in _____,
          (name)                                  (County of residence)
and is employed as a _____. This defendant is sued in
                     (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under
color of law: _____

_____ *See pa #1* _____

_____.

Defendant _____ resides in _____,
          (name)                                  (County of residence)
and is employed as a _____. This defendant is sued in
                     (defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under
color of law: _____

_____ *See pa #1* _____

_____.

§ 1983 SD Form
(Rev. 8/15)

2

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☒ Yes ☐ No.

If your answer is "Yes", describe each suit in the space below. [If more than one, attach additional pages providing the same information as below.]

(a) Parties to the previous lawsuit:

Plaintiffs: _____

Defendants: _____

(b) Name of the court and docket number: _____

_____.

(c) Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

_____.

(d) Issues raised: _____

_____

_____

_____

_____.

(e) Approximate date case was filed: _____.

(f) Approximate date of disposition: _____.

2. Have you previously sought and exhausted all forms of available relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDCR Inmate/Parolee Appeal Form 602, etc.] ? ☐ Yes ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results. If your answer is "No", briefly explain why administrative relief was not exhausted.

_____

_____

_____

_____

_____

_____

_____.

§ 1983 SD Form
(Rev. 8/15)

6

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief:

1. An injunction preventing defendant(s):

_____

_____

_____

_____.

2. Damages in the sum of $ _____.

3. Punitive damages in the sum of $ _____.

4. Other:_____

_____.

**F. Demand for Jury Trial**

Plaintiff demands a trial by ☒ Jury ☐ Court. (Choose one.)

_12-31-2025_
Date

_Benjamin _____
Signature of Plaintiff

Benjamin Flournoy (F-25814)
R.J. Donovan A-3-131 L
480 Alta Road
San Diego, California Republic [91789]

Plaintiff In Pro Se:

In The United States District Court

For The Southern District Of California Republic

Benjamin Flournoy,

Plaintiff,

v.

R. Acevedo, (Warden);
A. Rayes, (Associate Warden);
J. Martinez, (Facility Captain);
A. Reece, (Lieutenant);
D. Eustaquio, (Sergeant);
B. Louie, (Sergeant);
K. Mansfield, (Sergeant);
A. Solano, (Sergeant);
R. Segovia, (Sergeant);
A. Cuevas, (Peace Officer);
R. Romo, (Peace Officer);
A. Olmos, (Peace Officer);
O. Yiu, (Peace Officer);
E. Velasco, (Peace Officer);
M. Viloria, (Peace Officer);
V. Romero, (Peace Officer);
O. Galindo, (Peace Officer);
M. Blaicdel, (Medical Doctor);
A. Hernandez, (Registered Nurse),

Defendents.

Case No.

PRISONER'S CIVIL RIGHTS
COMPLAINT FOR VIOLATION
OF PRISONER CIVIL RIGHTS

42 U.S.C. § 1983 (Deliberate
Indifference, Cruel and
Unusual Punishment, Denial
of Emergency Medical Care)

DEMAND FOR JURY TRIAL

1

I.

INTRODUCTION

This Civil Rights Complaint is brought, due to an ongoing deprivation of Plaintiff Benjamin Flournoy's Civil Rights, secured by the Eighth Amendment of the Constitution for the United States of America, to be free from Deliberate Indifference, Cruel and Unusual Punishment and Denial of Emergency Treatment.

1. On April 13, 2025, Plaintiff was walking from his housing building A-3 on facility A, to the medical clinic near the program office at the other end of the yard. When Plaintiff arrived to the other end of the facility A yard, there was a trench at the other end that had been, dug out for water to run off the cement, to the drain or open trench only at the end of the yard with no warning signs of danger.

2. Plaintiff, did not notice the trench or know of that trench existed, until he stepped in that trench and fell as he lost his balance, face down unable to stop himself, fell on his face, causing injuries that required him to go an outside hospital to receive treatment for the injuries sustained.

3. However, Defendents Acevedo, A. Rayes, J. Martinez and A. Solano, did know or reasonably should have known, that any open trench for any reason on the yard where prisoners walk, could cause undue injure, when there was no advance

2

notice of the open trenches on the yard or warning signs near those trenches, to avoid possible injuries, to ADA prisoners and others.

4. On August 28, 2025, Plaintiff an elderly, ADA prisoner, with the assistance of a walker and wearing an ADA vest, housed at R.J. Donovan Correctional Facility (RJD) on facility A, building 3, was inside of the A-3 building rotunda, after the morning on his way to his assigned living quarters #A-3-131L.

5. While, Plaintiff was already still inside of the rotunda, as shown on the A-3 rotunda security camera footage and the body worn camera of Defendent M. Viloria, Plaintiff was nearly at the other end closest to the dayroom gril door, more then half way through.

6. To intentionally annoy, harass, discriminate, terrorize and intimidate, Plaintiff, an elderly, walker using ADA, american-alerican, based solely on the color of his skin tone, came into the A-3 rotunda, with no legitimate cause or emergency situation in progress.

7. In violation of CDCR policies, regulations, practices, procedures and rules, Defendent M. Viloria, intentionally, while Plaintiff was still inside of the A-3 rotunda, had asked Plaintiff to cuff up, to which he complied without being a threat and not resisting.

8. Defendent M. Viloria, intentionally cuffed Plaintiff in from the back, despite him having to use an ADA walker and ADA vest and Plaintiff making a valid complaint from being cuffed from the back causing him extreme pain, while he has a valid up to date waste chain cuffing chrono.

3

9.    Plaintiff, while in the rotunda and in restraints that were causing harm, made Defendent M. Viloria aware, that his legs were giving out and immediately requested emergency medical care.

10.    However, as Plaintiff's legs went out on him, after telling Defendent M. Viloria, that his legs were going out, Plaintiff started to fall because his legs were going out, Defendent M. Viloria, grabbed Plaintiff and started yelling stop resisting and intentionally fell on top of Plaintiff, using unnecessary excessive force, to maliciously and sadistically cause harm.

11.    Despite Plaintiff's immediate cry for emergency medical, while in extreme undue pain and discomfort, resulting from Defendent Viloria, falling onto his back and also maliciously and sadistically, inflicted an unnecessary and wanton infliction of pain and discomfort, by pulling on Plaintiff's left arm, causing injuries to his left sholder, right sholder and both sides and back of his neck, after Defendent M. Viloria, fell onto Plaintiff with all of his body weight, while in restraints, no emergency medical care was provided at the scene.

12.    At some point a personal alarm was activated and several Correction Peace Officers, including five Sergeants, with the legal duty and lawful authority to cause emergency medical care to be provided, but failed or refused

4

to ensure, that Plaintiff receive emergency medical care, after being unlawfully injured. to cover up staff malfeanace conduct, by using Green Wall and Code of Silence and filing false reports.

13.    As shown on the A-3 rotunda security footage, Defendent Viloria, intentionally entered into the rotunda from the dayroom, while Plaintiff was already in the rotunda, for the sole purpose of causing harm, with intimadation and undue excessive use of unnecessary force on Plaintiff, an Elderly, ADA, american aferican state prisoner, under his direct care, custody and control and subjected to Defendent Viloria's unlawful malfeanace conduct.

14.    Plaintiff was arbitrary and capriciously placed in handcuffs from the back and excessive unnecessary force was used as Plaintiff faced the A-3 rotunda wall, while Plaintiff was not a threat and not resisting. Defendent Viloria used a hand to apply undue pressure to Plaintiff's back and grabbed his left sholder, to maliciously and sadistically also apply undue pressure, to inflict an unnecessary and wanton infliction of pain, discomfort and to harm Plaintiff.

15.    As Defendent Viloria, continued to use unnecessary and excessive force on, Plaintiff with his ADA vest on, Defendent Viloria intentionally attempted to Pull Plaintiff off the rotunda floor by pushing Plaintiff's left sholder in the opposite direction and pulling Plaintiff up by his jacket that he had on to inflict undue pain maliciously and sadistially

5

to cause harm.

16.    However, during Defendent M. Viloria's excessive use of unnecessary force maliciously and sadistically to cause harm, not one of those officers standing around intervened, to prevent further undue cruel and unusual punishment being inflicted on Plaintiff, while watching the events unfold.

## II.

## VENUE

17.    The events described herein have taken place at the R. J. Donovan Correctional Facility, in San Diego, California Republic. Thus venue is proper under 28 U.S.C. § 3191 (b).

## III.

## JURISDICTION

18.    The events described herein occurred at R.J. Donovan Correctional Facility in San Diego, California Republic this Court under 42 U.S.C. § 1983 and the Eighth Amendment to the Constitution for the United States of America.

## IV.

## PARTIES

19.    Benjamin Flournoy, (hereinafter "PLAINTIFF"), is at all times herein mentioned a California State Prisoner, housed at the R.J. Donovan Correctional Facility, where the events giving rise this action have taken place.

6

20. R. Acevedo, (hereinafter "Defendent Acevedo"), is at all times herein mentioned, employed by California Department of Correction and Rehabilitation (CDCR), as Warden of R.J. Donovan Correctional Facility (RJD), is a defendent to this action and is being sued in his individual capacity.

21. A. Rayes, (hereinafter "Defendent Rayes"), is at all times mentioned, employed by CDCR, as Assoicate Warden at RJD, is a defendent to this action and is being sued in his individual capacity.

22. J. Martinez, (hereinafter "Defendent Martinez"), is at all times herein mentioned, employed by CDCR, as Facility A Captain at RJD, is a defendent to this action and is being sued in his individual capacity.

23. A. Reece, (hereinafter "Defendent Reece"), is at all times herein mentioned, employed by CDCR, as a correction Lieutenant at RJD, is a defendent to this action and is being sued in her individual capacity.

24. D. Eustaquio, (hereinafter "Defendent Eustaquio"), is at all times herein mentioned, employed by CDCR, as a Correction Sergeant at RJD, is a defendent to this action and is being sued in his individual capacity.

25. B. Louie, (hereinafter "Defendent Louie"), is at all times herein mentioned, employed by CDCR, as a Correction Sergeant at RJD, is a defendent to this action

7

and is being sued in his individual capacity

26. K. Mansfield, (hereinafter "Defendent Mansfield"), is at all times herein mentioned, employed by CDCR, as a Correction Sergeant, is a defendent to this action and is being sued in his individual capacity.

27. A. Solano, (hereinafter "Defendent Solano"), is at all times herein mentioned, employed by CDCR, as a Correction Sergeant at RJD, is a defendent to this action and is being sued in his individual capacity.

28. R. Segovia, (hereinafter "Defendent Segovia"), is at all times herein mentioned, employed by CDCR, as a Correction Sergeant at RJD, is a defendent to this action and is being sued in his individual capacity.

29. A. Cueveas, (hereinafter "Defendent Cueveas"), is at all times herein mentioned, employed by CDCR, as a Peace Officer at RJD, is a defendent in this action and is being sued in his individual capacity.

30. R. Romo, (hereinafter "Defendent Romo"), is at all times herein mentioned, employed by CDCR as a Peace Officer at RJD, is a defendent to this action and is being sued in his individual capacity.

31. A. Olmos, (hereinafter "Defendent Olmos"), is at all times herein mentioned, employed by CDCR as a Peace Officer, at RJD, is a defendent to this action and is being sued in his individual capacity.

8

32.   D. Ylv, (hereinafter "Defendent Ylv"), is at all times herein mentioned employed by CDCR, as a Peace Officer at RJD, is a defendent to this action and is being sued in his individual capacity.

33.   E. Velasco, (hereinafter "Defendent Velasco"), is at all times herein mentioned, employed by CDCR, as a Peace Officer at RJD, is a defendent to this action and is being sued in his individual capacity.

34.   M. Viloria, (hereinafter "Defendent Viloria"), is at all times herein mentioned, employed by CDCR, as a Peace Officer at RJD, is a defendent to this action and is being sued in his individual capacity.

35.   V. Romero, (hereinafter "Defendent Romero"), is at all times herein mentioned, employed by CDCR, as a Peace Officer at RJD, is a defendent to this action and is being sued in his individual capacity.

36.   O. Galindo, (hereinafter "Defendent Galindo"), is at all times herein mentioned, employed by CDCR as a Peace Officer at RJD, is a defendent in this action and is being sued in his individual capacity.

37.   M. Blaidel, (hereinafter "Defendent Blaidel"), is at all times herein mentioned, employed by CDCR, as a Medical Doctor at RJD, is a defendent to this action and is being sued in his individual capacity.

9

38. A. Hemandez, (hereinalter "Delendent Hemandez"), is at all times herein mentioned, employed by CDCR, as a Registered Nurse at RJD, is a delendent in this action and is being sued in her individual capacity.

V.

STATEMENT OF FACTS

39. On April 13, 2025, Plaintiff an Elderly, ADA, State Prisoner, forced to now use an ADA walker to assist him in his ability to get from point "A" to point "B."

40. While, Delendents Acevedo, Rayes, Martinez and Solano, are lawlully responsible for ensuring that facility "A" where Plaintill is housed at RJD, are ADA sale for all ADA prisoners and ADA acessable by law.

41. Delendent Acevedo, as Warden of RJD, did know or reasonably should have known, that he is responsible for the overall running RJD, the conduct of all state prison officials, "under his direct supervision," and the overall care of all prisoners, including all ADA wheelchair and walker users health and safety; But was deliberately indilferent to Plaintill's health and salety. when Plaintill walked from his housing quarters, to the A facility medical clinic and belore

10

reaching the medical clinic tripped, due to a trench at the end of the A facility yard, where Plaintiff fell to the ground, unable to stop himself, injured himself falling face first on the cement walk way.

42. Defendent Rayes, the associate warden of facility A, also had a lawful duty, to ensure the health and safety of all state prisoners, including ADA prisoners at RJD, but was deliberately indifferent to the health and safety of Plaintiff, when failing and or refusing to do so, resulting in Plaintiff sustaining injures to his face and receiving outside hospital medical attention.

43. Defendent Martinez, the facility A Captain, was also responsible for the health and safety of all A facility prisoners, including those ADA prisoners on A facility, but was deliberately indifferent to the health and safety of Plaintiff, by failing or refusing to do so, causing undue injuries to Plaintiff's face.

44. Defendent Solano, the Yard Sergeant of A facility, did know or reasonably should have known, that its' his duty and responsibility, to ensure that the yard is ADA safe and free of oppsticials that may cause an unsafe enviornment for prisoner, including those with physical ADA status. was deliberately indifferent, to the health and safety of Plaintiff, resulting in physical injuries.

11

45.   As a result of the actions or inactions of Defendents Acevedo, Rayes, Martinez and Solano, in failing or refusing, to ensure the health and safety of state prisoners, at RJD, including ADA prisoners; their deliberate indifference cause undue personal injuries, to Plaintiff and undue suffering from the trench dug, with no warning signs or advance notice of the existance of the trench, injuries were sustained by Plaintiff, forcing him to go to an outside hospital, for the necessary emergency treatment to his injuries.

46.   On August 28, 2025, upon the conclusion of Plaintiff's morning meal, he immediately returned to his housing quarters, at facility A, building 3, with his ADA vest on and with an ADA walker, slowly to avoid undue pain and suffering.

47.   Upon reaching the A-3 rotundo, Plaintiff entered with his walker, to assist his ability to walk slowly and was more than half-way through the rotunda; when Defendent Viloria, decided to intimadate, annoy, discriminate, harass, and abuse his pretended authority, to intentionally, maliciously and sadistially, cause harm and to inflict an unnecessary and wanton infliction of pain and discomfort, by using an unnecessary excessive amount of force on Plaintiff, after also entering the A-3 rotunda, while Plaintiff was almost at the dayroom door side of the rotunda.

12

47.   While Plaintiff was still inside of the rotunda. Defendent Viloria, for the sole purpose of intimadating and terrorizing, an elderly. ADA, american-aferican prisoner, requested that Plaintiff cuff up, at which time Defendent Viloria, intentionally grabbed Plaintiff's right arm, as he explained that he has a valid waist chain cuffing only chrono, which Defendent Viloria ignored, since he himself is a threati

48.   Plaintiff was not a threat and did not resist, but did cry out in pain, to Defendent Viloria, "you're hurting me", when unnecessary and wanton infliction of pain and discomfort, maliciously and sadistically continued, to intentionally cause Plaintiff harm.

49.   While continuing to terrorize Plaintiff, grabbed his left arm, forcing Plaintiff to be cuffed from behind, causing more inflicting of unnecessary and wanton infliction of pain and discomfort, maliciously and also sadistically, while not knowing Plaintiff's medical history, continued to knowingly cause undue pain, to an elderly, disable, ADA prisoner, for self satisfaction.

50.   Plaintiff, while suffering undue pain and extreme discomfort from being cuffed from behind, requested that he receive emergency medical treatment, that Defendent Viloria, also ignored, as the type of Green Wall actions or inactions, which is the norm at RJD. to inflict pain.

13

51.    While still in restraints from behind, Defendent Viloria, intentionally used excessive unnecessary force on Plaintiff, as a form of intimadation, to terrorize, annoy, discriminate, harass and inflict fear upon Plaintiff, as he faced the rotunda wall.

52.    Defendent Viloria, personally used excessive force by causing Plaintiff to suffer undue extreme pain while in hand cuffs cuffed from behind, when he pushed into Plaintiff's back, without knowing his medical condition and also pushing Plaintiff's left sholder, to inflict an unnecessary and wanton infliction of undue pain on an elderly abused ADA prisoner.

53.    Defendent Viloria, intentionally started to twist him into a painful position while cuffed, causing unncessary excessive extreme pain and discomfort, as Plaintiff could fell his legs going out on him. due to the infliction of excessive force, resulting in a personal alarm being activated while still cuffed in the back.

54.    Several Defendents arrived including, but not limited to Defendent Eustaquio, Louie, Mansfield, Solano and Segovia, all with the higher rank of Sergeant and did know that Plaintiff has serious medical conditions that require him to use limited movement and is ADA due to medical history.

55.    Defendents Cuevas, Romo, Olmos, Ylv, Flores, Velasco, and Romero and Galindo are Peace Officers, that failed to intervene, when Defendent Viloria intentionally caused Plaintiff, an unnecessary and wanton infliction of pain

14

and discomfort, due to an unnecessary use of excessive force, by Defendent Viloria, after a personal alarm had been activated.

56.    Plaintiff, after already making Defendent Viloria aware, that his legs were going out and responding staff arrived, while still inside the rotunda facing the wall in pain, his legs gave out and Plaintiff fell, as his legs went completely out.

57.    Defendent Viloria, intentionally grabbed Plaintiff without cause and fell with all of his body weight, onto Plaintiff's back, inflicting extreme pain, causing Plaintiff to yell out in undue pain and discomfort, with Defendent Viloria landing on him and still on his back, causing injury.

58.    Plaintiff, immediately requested emergency medical care and did not consent to being lifted from the ground by untrained non-medical correctional personnel.

59.    While still in pain, Defendent Viloria refused and failed to provide any emergency medical treatment, even after personally falling on Plaintiff's back, with full body weight to cause a unnecessary and wanton infliction of pain.

60.    As Plaintiff was face down on the rotunda floor Defendent Viloria requested leg restraints, not medical

15

care and intentionally pushed his hand into Plaintiff's back and left sholder applying pressure, causing extreme pain forcing Plaintiff to yell "don't touch me".

61. Without Plaintiff giving consent to be moved by non-medical custody staff and against his will, Defendent Viloria took it upon himself to pull Plaintiff from the rotunda floor, in an attempt to cover up and make it look as if, Plaintiff did not need medical care, grabbed Plaintiff's left arm also pushing his left sholder, attempting to twist Plaintiff's body into the opposite direction, inflicting an unnecessary and wanton infliction of pain, injuries and discomfort, with excessive unnecessary use of force.

62. Defendent Viloria, seeing Plaintiff wearing his ADA vest, knowing he is an elderly ward of the state of California Republic, Plaintiff still did not consent to Defendent Viloria, pulling his jacket, in an attempt to cause him to be in a standing position, caused more injure and still refused to provide or call for emergency medical care and no one present, after responding to a staff alarm intervened.

63. While Defendent Viloria, after forcing Plaintiff to his feet, when his legs had given out causing him to fall once and no medically trained staff was provided, Plaintiff was placed into a sitting position on his ADA walker, by Defendent Viloria and Plaintiff had not denied any medical staff the opportunity to treat his newly sustained injuries.

16

64. Once Plaintiff was setted on his ADA walker, being pushed out of the A-3 rotunda Defendent Viloria, had ISU Defendent Romero take over Plaintiff's custody.

65. Defendent Eustaquio, a witness to the actions or inactions of Defendent Viloria, causing undue injuries to Plaintiff, with his hands on the upper left side of Plaintiff's back, using undue pressure while in restraints and heard Plaintiff still demanding to receive emergency medical treatment, did know or reasonably should have known, that as a higher ranking Sergeant had a lawful duty and obligation to ensure that Plaintiff receive emegerncy medical care, but failed or refused to do so, continuing Plaintiff's suffering.

66. Defendent Segovia, witnessed Plaintiff on the ground in restraints cuffed in the back and Defendent Viloria ISU officer, use undue excessive unnecessary force on Plaintiff, while in restraints and use his body weight to drive him back into the ground, while Plaintiff was not resisting and not a threat, to the safety or security of the institution, Defendent Viloria started yelling stop resisting, while Plaintiff an elderly ADA, received elderly and ADA abuse.

67. Defendent Segovia, having a lawful duty and obligation to provide Plaintiff with emergency medical treatment, did know or reasonably should have known that his refusal or failure to do so, violated Plaintiff's civil rights.

68. Defendent Romo witnessed and heard Plaintiff fall

17

behind him, while in restraints, was on the ground because Plaintiff's legs had gone out and Defendent Viloria had been intentionally pushing Plaintiff's upper back against the rotunda wall, to inflict extreme pain and discomfort.

69. Defendent Mansfield, in an attempt to cover up the malfeanace conduct of Defendent Viloria and Green Wall actions or inactions intentionally invoked a Code of Silence contended Plaintiff throw himself to the ground taking Defendent Viloria to the ground with him.

70. However, Defendent Mansfield further concided that he did not witness Plaintiff actively resist, but did know or reasonably should have known, that he maintained his lawful duty and obligation, to provide Plaintiff, an elderly ADA prisoner, with emergency medical and not allow the ADA and elderly abuse to continue.

71. Defendent Olmos, responded to the personal alarm activated at A-3 rotunda, witnessed Plaintiff in restraints cuffed in the back, facing the rotunda wall, with Defendent Viloria using excessive unnecessary force and elderly abuse to an ADA prisoner.

72. Defendent Viloria, was witnessed using his right hand on Plaintiff's right arm and his left forearm inflicting pain with pressure, to Plaintiff's upper back, where Plaintiff has metal plates in his back and neck, which caused Plaintiff to suddenly move and Defendent Viloria

18

intentionally, maliciously and sadistically used excessive unnecessary force, for the sole purpose of inflicting harm.

73. Defendent Olmos, contended that he heard a loud sound consistent with someone falling and noticed Plaintiff had fallen to the ground, Defendent Viloria placing his arm on Plaintiff's upper back, inflicting unnecessary excessive force, to cause undue pain and discomfort intentionally, as Defendent Galindo placed leg restraints on Plaintiff.

74. Defendent Ylv, witnessed Plaintiff, as he fell to the ground and to cover up Green Wall activity contends Defendent Viloria assisted Plaintiff to get him back on his feet, but at no time was any emergency medical care provided. and to put the blam on Plaintiff put chains on his feet, to further abuse an elderly ADA prisoner.

75. Defendent Solano, witnessed Plaintiff fall down when his legs went out and also saw Defendent Viloria fall on top of Plaintiff's back, while in restraints and the fact that Plaintiff had not been a physical threat and was not actively resisting, other than falling to the ground, when his legs gave way.

76. Defendent Solano, also observed Defendent Viloria deny Plaintiff all emergency medical treatment, after falling onto Plaintiff's back with full body weight. and Plaintiff had requested emergency medical care, due to the serious injuries sustained.

19

77. Defendent Solano, having the rank of Sergeant did know or reasonably should have known, that by law he has a lawful duty and obligation to provide Plaintiff with emergency medical treatment, after his legs went out and Defendent Viloria fell onto Plaintiff's back and neck, but failed to do so.

78 Defendent Velasco, contended that waist restraints were handed to Defendent Romero, that should have been placed on Plaintiff an elderly ADA prisoner, but were returned and replaced with leg restraints to be placed on Plaintiff, despite him having a valid medical waist chain only cuffing chrono.

79. Defendent Galindo, observed Plaintiff fall to the ground and immediately responded and held Plaintiff down, after his legs went out, causing the fall and Defendent Viloria fell on Plaintiff's back and personally put chains on his legs.

80. Defendent Galindo, used undue excessive force on Plaintiff, when holding him down, after his legs went out and Defendent Viloria, had fallen on Plaintiff's back, prior to the immediate response, to inflict undue pain and discomfort, violated Plaintiff's civil rights.

81. Defendent Romero, observed Plaintiff fall to the ground, after his legs went out and without knowing the medical cause for his legs going out, did not seek any emergency medical care, but gladly requested leg restraints to

20

further restrict Plaintiff's movement an elderly ADA prisoner now also subjected to elder abuse.

82. Moreover, Defendent Romero observed Defendent Viloria, with no medical training on how to lift an injured individual in the proper manner from the ground. Observed Defendent Viloria attempt to pull Plaintiff up on his feet, while using an unnecessary excessive amount of force, maliciously and sadistically to inflict harm, pulling Plaintiff's jacket he was in, causing an unnecessary and wanton infliction of extreme pain and discomfort, resulting in a natural reflex, making Plaintiff jerk away from what was causing the extreme pain and to yell out "don't touch my left side". No emergency medical care was provided despite Plaintiff suffering extreme pain.

83. Defendent Cuevas, observed Plaintiff fall when his legs went out, explaining how his body weight dropped and he could'nt help himself from falling. However, there is no mention of Defendent Viloria falling onto Plaintiff's back, causing him to suffer serious injuries to his left sholder and neck.

84. Defendent Cuevas, contends he observed Defendent Viloria attempt to assist Plaintiff to his feet, while from his viewpoint while Defendent Viloria pulled him up, due to the extreme pain being inflicted, Plaintiff

21

was forced to jerk away and yell "don't touch my left side" despite Defendent Viloria not being medically trained should have called and provided emergency medical care.

85. On August 28, 2025, Defendent Louie, responded to the alarm at A-3 and observed Plaintiff on the ground in restraints with Defendent Viloria's hands on Plaintiff's upper left back and sholder area and Plaintiff yelling, due to the use of excessive unnecessary force, causing maliciously, sadistically, intentional serious harm.

86. Defendent Louie, having the rank of Sergeant, did know or reasonably should have known, that Defendent Viloria, did not have any medical training, to know how to assist an injured, ADA, elderly prisoner, to his feet, while cuffed from behind with a valid waist chain only chrono from medical.

87. Defendent Louie, observed Defendent Viloria, attempt to assist Plaintiff to his sitting position by grabbing his left sholder and twisted his body, causing undue extreme, undue pain and discomfort, forcing Plaintiff to try to move in a direction to avoid the excessive use of unnecessary force and the unnecessary and wanton infliction of pain.

88. Defendent Louie, further observed Defendent Viloria, intentionally use undue excessive unnecessary force, on an elderly ADA prisoner, using his full body weight on an already injured individual, to force Plaintiff back

22

to the ground, while intentionally, maliciously and sadistically, using an unnecessary and wanton infliction of pain and discomfort and injure, to Plaintiff's right sholder causing undue harm. but intended to place the blam on Plaintiff, while not a threat and not resisting, started yelling stop resisting.

89. Defendent Louie in an attempt to cover up these Green Wall practices and Code of Silence condoned such use by failing and refusing to file a staff malfeanace conduct complaint against Defendent Uiloria and also, while having the legal duty and lawful obligation to provide emergency medical care, intentionally, willingly and knowingly failed and refused to do so.

40. On August 28, 2025, Defendent Hemandez, noted on the incident medical report, that Plaintiff had been wrongfully cuffed from behind, while having a valid medical waist chain cuffing only medical chrono.

91. Defendent Hemandez further, found injuries to Plaintiff as indicated "Yes" and marked on the medical report of injury where those injuries were located for the record.

92. Defendent Hemandez, in an attempt to cover up Green Wall practices and to invoke the Code of Silence, to further be deliberately indifferent to the health and safety of Plaintiff, intentionally manufactured a fraudulent, medical report of injury, pretending to be a TTA examining nurse, when Plaintiff was never sent to TTA for any treatment, when should have received emergency medical treatment, for those injuries sustained, contended no injuries were sustained.

23

93. On August 28, 2025, Defendent Hemandez, intentionally acted with reckless indifference, when Plaintiff explained the injuries that he sustained, were due to what had occurred in the A-3 rotunda, where Defendent Viloria inflicted a unnecessary and wanton infliction of pain and extreme discomfort, with the use of excessive unnecessary force on an elderly, ADA prisoner, Plaintiff.

94. Defendent Hemandez, in an attempt to further cover up Green Wall conduct and invoking a Code of Silence, intentionally, while acting with deliberate indifference, contended, already has pain medication and did not need any stronger pain medican, for the extreme pain and discomfort, being suffered, as a result of the staff malfeanace conduct, inflicted for the sole purpose of causing harm for self-satisfaction.

95. Plaintiff reported extreme pain and numbness on the left side from his sholder down to his feet, no medical examination to his left side to determine the extent of injuries was conducted.

96. Defendent Hemandez, intentionally falsified Plaintiff's medical records condending Plaintiff reported "custody used force on him and he fell on the ground and hit his

24

whole left side", this misstates the facts of what was provided by Plaintiff.

97. On September 9, 2025, Plaintiff, was seen by Medical Doctor Frank K. Yoo M.D, and his medical condition is described as follows." Due to patient's back and lower extremity pain and other symptoms his functional limitations are that he can not walk very well or stand for long periods of time. His activities of daily living are affected and the way he can not participate in many activities including working, exercising, and being mobile. The chance of success with surgery is 80% improvement in his pain funtional, limitations and activities of daily living."

98. Doctor Frank K. Yoo. further states, "The patient has had lower back and lower extremity problems for a long time and has been managed with lumbar epidural steroid injections every six months or so. However, once the steroid injections wear off his pain comes back in a severe way. He tells me he did tolerate the back pain. However, it is his lower extremity symptoms that are the most disturbing for him and would like those addressed. Patient did experience a fall in the interim. Patient has lower back pain that radiates down both legs. His lower extramity symptoms seems to be worse than his back pain."

25

99. From August 28, 2025, through to November 2025, Plaintiff was deprived of medical treatment, for the injuries and despite submitting several written medical requests for the injuries sustained, due to the unnecessary use of excessive force and reckless and deliberate indifference, to his health and safety, Defendent Blaicdel, declined to see Plaintiff, despite his daily suffering of an unnecessary and wanton infliction of pain and discomfort; no medical treatment for those injuries sustained on August 28, 2025, was ever provided.

100. The lack of medical care for the injuries sustained is the norm at RJD, for the sole purpose of protecting Green Wall practices, to cover up injuries and invoke a Code of Silence, to prevent the truth of what actually occurred from coming out.

101. Defendent Blaicdel, has continued to delay and deny, the necessary medical X-Rays, CAT scanes or other necessary medical care, to determine the needed extent of injuries Plaintiff sustained on August 28, 2025, as a result of undue excessive unnecessary force inflicted by Defendent Viloria.

102. On October 30, 2025, to add injury to insault

26

Defendent Reece, in an attempt to cover up Green Wall practices and to continue to support a Code of Silence, intentionally bullied Plaintiff, at the RVR rules violation report hearing.

103. Defendent Reece, conducted the RVR hearing, to which Defendent Viloria, had manufactured a fraudulent disciplinary 115 report, to cover up the unlawful unnecessary use of excessive force on Plaintiff, an elderly ADA prisoner, to maliciously and sadistically inflict an unnecessary and wanton infliction of pain and discomfort for self-satisfaction.

104. Defendent Reece, intentionally refused to allow Plaintiff the opportunity to present a defense, by refusing to review readily available A-3 building security camera (Rotunda) footage, where the events giving rise to this action took place and body worn cameras that would have supported Plaintiff's claims.

105. Defendent Reece, willingly, knowingly and intentionally, refused to follow CDCR rules, policies, regulations practices, and procedures, for the sole purpose of shielding co-workers

that inflict undue pain and discomfort, onto the state's prisoners, to punish with cruel and unusual punishment.

106. Defendent Reece, while shielding her co-workes, failed to report the malfeanace conduct as required, to allow cruel and unusual punishment to continue, without due process, intentionally found Plaintiff guilty of the charged, after Plaintiff walked out, because he did not want to sit and continue to allow Defendent Reece to bully him when she already had her mind made up to find him guilty, to inflict reckless pain and deliberate indifference to Plaintiff's health, mental health and safety.

107. PLAINTIFF, incorporates paragraphs 1 through 45 as though fully set forth herein at length.

108. Upon information and belief, Plaintiff alledges that the actions or inactions of Defendents Acevedo, Rayes, Martinez, and Solano, to ensure the safety of all elderly and ADA prisoners, by failing or allowing trenchs on the facility "A" yard, that could subsequently cause harm, when tripped over by Plaintiff constitutes reckless deliberate indifference to Plaintiff's health and safety, but only after Plaintiff received serious injuries, the trenches with rocks then filled the trenches.

109. PLAINTIFF, incorporates paragraphs 46 through 109

28

as though fully set forth herein at length.

110. Upon information and belief, Plaintiff alledges that the actions or inactions of Defendents Reece, Eustaquio, Louie, Mansfield, Solano, Segovia, Cueveas, Romo, Olmos, Ylv, Velasco, Romero, Galindo, Viloria, Blaicdel and Hemandez, to allow Plaintiff, an ADA elder receive elderly abuse at the hands of those who have sworn to protect prisoners in accordance with their oath of employment, but have intentionally committed perjury in failing and refusing to fulfill their sworn oath.

111. Moreover, Defendents Reece, Eustaquio, Louie, Mansfield, Solano, Segovia, Cueveas, Romo, Olmos, Ylv, Velasco, Romero, Galindo, while Defendent Viloria, intentionally used excessive unnecessary force, to maliciously and sadistically cause harm, yet failed to intervene as required and despite having a lawful duty and obligation to do so, also failed/refused to provide Plaintiff with emergency medical care, when he was injured when he fell, after his legs went out and then Defendent Viloria, intentionally fell onto Plaintiff's back.

112. Defendents Reece, Eustaquio, Louie, Mansfield, Solano, Segovia, Cueveas, Romo, Olmos, Ylu, Velasco, Romero, Galindo, Viloria, Blaicdel and Hemandez, have intentionally, participated in Green Wall practices, Code of Silence and filed fraudulent reports on State papers, to

29

assist in the cover up and commit personally, the same malfeance conduct, that is also unlawful to inflict cruel and unusual punishment, while being deliberately indifferent to Plaintiff's health and safety.

## VI.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Grant Plaintiff, Compensatory Damages against Defendents Acevedo, Rayes and Martinez, for their failure to ensure the safety of all prisoners, in the fair amount of not less than $100.000.00. jointly and severly;

2. Grant Plaintiff, Compensatory Damages against Defendents Eustaquio, Louie, Mansfield, Solano and Segovia, for their intentional failure and refusal, to ensure emergency medical care, while having a lawful duty and lawful obligation to do so, after Plaintiff, while in extreme pain requested emergency medical care after a fall, in the fair amount of $150.000.00. jointly and severly.

3. Grant Plaintiff, Compensatory Damages against Defendents Olmos, Cueveas, Romo, Ylv, Velasco, Romero and Galindo for failure and refusal to intervene, while Plaintiff was being assualted by Defendent Viloria, while being present in the fair amount of $100.000.00. jointly and severly.

30

4. Grant Plaintill, Compensatory Damages against Delendent Reece, for the intentional abuse of authority to cover up Green Wall activity, to allow prisoners to be assaulted by her co-workers and use the Code of Silence supporting the use of excessive force on elderly ADA prisoners, in the fair amount of $125.000.00. jointly and severly.

5. Grant Plaintill, Compensatory Damages against Delendent Viloria, for the unnecessary use of excessive force and the serious injuries Plaintill sustained, from maliciously and sadistically causing harm, in the fair amount of $200.000.00. jointly and severly.

6. Grant Plaintill, Compensatory Damages against Delendent Blaicdel, for the ongoing delays and denials of medical care, needed to determine the extent of Plaintill's serious injuries sustained due to excessive use of force while in restraints, in the fair amount of $50.000.00. jointly and severly.

7. Grant Plaintill, Compensatory Damages against Delendent Hemandez, for the ongoing and continued denials of medical care, for the serious injuries sustained on August 28, 2025, and emergency medical care was not provided to help cover up staff malfearace conduct and making false health records, in the fair amount of $50.000.00. jointly and severly.

8. Grant Plaintill Punitive Damages against Delendents Acevedo, Rayes and Martinez, to punish them for their intentional failures to ensure the safety and security of all prisoners free of trenches and oppsticals that caused harm to

31

Plaintiff, resulting in outside hospital treatment for his sustained injuries to his face, in the fair amount of $200.000.00. jointly and. severly.

9. Grant Plaintiff, Punitive Damages against Defendents Eustaquio, Louie, Mansfield, Solano and Segovia, to punish them for their intentional deliberate indifference to the health and safety of Plaintiff in the fair amount of $300.000.00. jointly and severly.

10. Grant Plaintiff, Punitive Damages against Defendents Olmos, Cueveas, Romo, Ylv, Velasco, Romero and Galindo, to punish them for violation of Plaintiff's civil rights allowing the unnecessary use of excessive force to continue while watching the events unfold in the fair amount of $200.000.00. jointly and severly.

11. Grant Plaintiff, Punitive Damages against Defendent Reece, to punish her for the continued use of Green Wall activities Code of Silence and attempts to cover up staff malfeanace conduct, with more misconduct and reckless indifference to Plaintiff's health and safety in the fair amount of $250.000.00. jointly and severly.

12. Grant Plaintiff, Punitive Damages against Defendent Blaicdel, for the continued ongoing denials of necessary

32

medical care meant to show the extent of injuries sustained and how much irreprable harm was caused from the unnecessary use of excessive force, while in restraints, in the fair amount of $100.000.00. jointly and severly.

13. Grant Plaintiff, Punitive Damages against Defendent Viloria, to punish him for the intentional excessive use of unnecessary force, while in restraints, to maliciously and sadistically inflict an unnecessary and wanton infliction of pain, injury and irreprable harm, in the in the fair amount of $400.000.00. jointly and severly

14. Grant Plaintiff Punitive Damages against Defendent Hemandez, for assisting in Green Wall cover ups, denial of emergency medical necessary treatment, making fraudulent medical reports to undenmind and cause undue irreprable harm, in the fair amount of $100.000.00. jointly and severly.

15. Grant Plaintiff any other or further relief this Court equitable, including Nominal Dameges, in the interest of justice.

Dated: 12-23-2025                    Respectfully Submitted

                                     Benj— Fl—

## VII.

.33

## VERIFICATION

I Benjamin Flournoy, am the Plaintiff in the above Civil Rights Complaint. I have read the foregoing complaint, the same is true of my own personal knowledge, except those matters stated on information and belief and as to those I believe them to be true.

Dated: 12-23-2025                    Respectfully Submitted

                                     Benjamin Flournoy

## VIII.

## DECLARATION

I Benjamin Flournoy hereby declare under penalty of perjury, that the foregoing is true, correct and not meant to be misleading, under the laws of the united States of America.

Dated: 12-23-2025                    Respectfully Submitted

                                     Benjamin Flournoy

39



BENJAMIN FLOURNOY F-25814 A31-31
RICHARD J. Donovan Correctional Facility
480 ALTA Road
San Diego, CALif. 92179



quadient
PRIORITY MAIL
IMI
$010.90
01/07/2026  ZIP 92179
043M32200740
US POSTAGE

RECEIVED

JAN 08 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY



USDC - SOUTHERN District OF
CALIFORNIA

Edward J SCHWARTZ Courthouse
221 West Broadway.
San Diego, CALIFORNIA,
            92101

1 OF 1

