UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BENJAMIN FLOURNOY,
CDCR #F-25814,

Plaintiff,

vs.

WARDEN ACEVEDO, et al.,

Defendants.

Case No.:  26cv0229-WQH (DEB)

**ORDER:**

**(1) GRANTING FIRST MOTION TO PROCEED IN FORMA PAUPERIS,**

**(2) DENYING AS MOOT SECOND MOTION TO PROCEED IN FORMA PAUPERIS, and**

**(3) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

Plaintiff Benjamin Flournoy ("Plaintiff"), a state prisoner proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff has also filed two Motions to proceed in forma pauperis ("IFP"). (ECF Nos. 2, 5.)

**I.      Motions to Proceed IFP**

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See*

1

28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

Here, Plaintiff's prison certificate shows he had an average monthly balance of $35.17 and average monthly deposits of $28.00 for the six months preceding the filing of this action, and an available balance of $60.60. (ECF No. 4 at 3.)

The Court **GRANTS** Plaintiff's first motion to proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $7.03. Plaintiff remains obligated to pay the $342.97 balance of the filing fee required by 28 U.S.C. § 1914 pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1). Because Plaintiff has now been granted leave to proceed IFP, his second motion to proceed IFP (ECF No. 5) is **DENIED** as moot.

## II.     Screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See*

26cv0229-WQH (DEB)

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

### B.    Allegations in the Complaint

On April 13, 2025, while walking from his housing unit to the medical clinic, Plaintiff stepped in a drainage trench which he did not see or know was there and which had no warning sign. (ECF No. 1 at 6.) Plaintiff fell on his face "causing injuries that required him to go to an outside hospital to receive treatment for the injuries sustained."

26cv0229-WQH (DEB)

*Id.* Plaintiff claims Defendants Warden Acevedo, Associate Warden Rayes, Facility Captain Martinez and Sergeant Solano knew or should have known that an open trench posed a danger to an elderly inmate, such as himself, who uses a walker to accommodate a disability protected by the Americans with Disabilities Act ("ADA"). *Id.* at 6–7, 14–16.

On August 28, 2025, Plaintiff was walking across the rotunda when Defendant Correctional Officer Viloria, "[t]o intentionally annoy, harass, discriminate, terrorize and intimidate Plaintiff, an elderly, walker-using ADA, African American, based solely on the color of his skin tone, came into the A-3 rotunda with no legitimate cause or emergency situation in progress," and in violation of prison policies, asked Plaintiff to cuff up, to which he complied without resisting. *Id.* at 7. Viloria handcuffed Plaintiff with his hands behind his back despite him having a "valid up to date waist chain cuffing chrono." *Id.* Plaintiff "made Viloria aware that his legs were giving out and immediately requested emergency medical care." *Id.* at 8. As Plaintiff started to fall, Viloria grabbed him, yelled at him to stop resisting even though Plaintiff was not resisting, and intentionally fell on top of him "using unnecessary and excessive force to maliciously cause harm." *Id.* Viloria pulled up on Plaintiff's jacket while pushing his arm in the opposite direction trying to twist him. *Id.* at 8–10, 17–20. Viloria yelled for restraints and pushed his hand on Plaintiff's back and left shoulder as Defendant Correctional Officer Galindo placed him in leg restrains while Plaintiff yelled for emergency medical care because he was in pain and did not want Viloria to lift him off the ground. *Id.* at 19–20, 23. "Not one of [the] officers standing around intervened." *Id.* at 10. Plaintiff alleges that Viloria should have known to call for emergency medical aid but, instead, placed him in a sitting position on his walker and pushed him out of the rotunda. *Id.* at 20-21. Plaintiff suffered "severe injuries to his left shoulder and neck" and "extreme pain and numbness on the left side from his shoulder down to his feet." *Id.* at 25, 28.

Plaintiff alleges that Defendants Sergeants Eustaquio, Louie, Mansfield, Solano and Segovia arrived and knew he needed medical attention but did not summon medical aid. *Id.* at 18. Plaintiff alleges that Defendants Correctional Officers Cuevas, Romo, Olmos,

4

Ylv, Flores, Velasco, Romero and Galindo were in the area and failed to intervene or respond to Plaintiff's request for medical help. *Id*. at 9-10, 18-19.

Specifically, Plaintiff alleges the following: Eustaquio saw Viloria place his hands on Plaintiff's back while in restraints and heard Plaintiff call for medical aid but failed to summon medical attention. *Id*. at 21. Segovia saw Viloria use his body weight to drive Plaintiff to the ground while he was in restraints without resisting or being a threat and failed to summon emergency medical aid. *Id*. Romo "witnessed and heard Plaintiff fall behind him," and saw Viloria "intentionally pushing Plaintiff's upper back against the rotunda wall to inflict extreme pain and discomfort." *Id*. at 21-22. Mansfield, "in an attempt to cover up the malfeasance . . . invoked a Code of Silence" and stated that that Plaintiff "threw himself to the ground taking Viloria with him." *Id*. at 22. Mansfield conceded, however, that he did not see Plaintiff "actively resist," and knew or should have known he had a duty to summon medical attention and not allow the abuse to continue. *Id*. at 22. Olmos responded to a personal alarm, witnessed Plaintiff fall while in restraints, and saw Viloria use his right hand on Plaintiff's right arm and left forearm to apply pressure to Plaintiff's upper back, where he has metal plates in his back and neck, while Galindo placed him in leg restraints. *Id*. at 22-23. Ylv witnessed Plaintiff fall and, "to cover up the Green Wall activity," stated that "Viloria assisted Plaintiff to get him back on his feet," but failed to summon medical aid and placed chains on his feet. *Id*. at 23. Solano saw Plaintiff fall when his legs gave way, saw Viloria fall on Plaintiff's back and neck while in restraints, saw that Plaintiff was not actively resisting or being a threat, saw Viloria deny Plaintiff medical treatment, and knew or should have known Plaintiff needed emergency medical attention but failed to summon medical help. *Id*. at 23-24. Velasco "contended that waist restraints were handed to defendant Romero, that should have been placed on Plaintiff, an elderly ADA prisoner, but were returned and replaced with leg restraints," despite Plaintiff having a "valid medical waist chain only cuffing chrono." *Id*. at 24. Galindo saw Plaintiff fall and responded by using excessive force in holding him down after his legs went out and Viloria fell on him. *Id*. Romero saw Plaintiff fall and, without knowing the medical

26cv0229-WQH (DEB)

cause for his legs going out, requested leg restraints, observed Viloria pull Plaintiff's jacket when lifting him off the ground "with no medical training on how to lift an injured individual in the proper manner from the ground," causing Plaintiff to jerk in pain and call out "don't touch my left side," and did not summon medical care. *Id*. at 24-25. Cuevas observed Plaintiff fall, "explaining how his body weight dropped and he couldn't help himself from falling. However, there is no mention of defendant Viloria falling onto plaintiff's back." *Id*. at 25. Cuevas "contends he observed defendant Viloria attempt to assist Plaintiff to his feet," resulting in Plaintiff jerking away due to pain and yelling "don't touch my left side," and should have but failed to summon medical care. *Id*. at 25-26. Louie responded to the alarm and saw Plaintiff on the ground in restraints with Viloria's hands on his upper left back and shoulder assisting Plaintiff to a sitting position by grabbing his left shoulder, twisting his body and forcing him back to the ground without summoning medical care, refused his duty to provide emergency medical care, and "in an attempt to cover up these Green Wall practices and code of silence," failed to file a staff malfeasance complaint against Viloria. *Id*. at 26–27. Nurse Hernandez noted on the incident medical report that Plaintiff had been wrongly handcuffed from behind while having a valid medical waist chain cuffing only chrono and noted he had suffered injuries, but "in an attempt to cover up Green Wall practices and to invoke the code of silence . . . intentionally manufactured a fraudulent medical report of injury pretending to be a TTA examining nurse when plaintiff was never sent to TTA for any treatment . . . [and] contended no injuries were sustained." *Id*. at 27. Hernandez also contended that Plaintiff needed no stronger pain medication than what he was already receiving and falsified medical records by falsely stating that Plaintiff reported "custody used force on him and he fell to the ground and hit his whole left side." *Id*. at 27–29.

Plaintiff alleges that he was seen by a doctor on September 9, 2025, who noted that he had suffered a fall and was reporting "lower back pain that radiates down both legs. His lower extremity symptoms seem to be worse than his back pain." *Id*. at 29. Plaintiff alleges that from August 28, 2025, through November 2025, he was provided with no medical

26cv0229-WQH (DEB)

treatment for the injuries sustained during the incident and never has been. *Id*. at 30. Plaintiff alleges Defendant Dr. Blaisdell "declined to see" him and that Dr. Blaisdell denied and delayed x-rays, CAT scans, and other medical tests needed to determine the extent of his injuries. *Id*.

On October 30, 2025, Defendant Lieutenant Reece "bullied Plaintiff at the RVR rules violation hearing," which was based on a fraudulent disciplinary report, by refusing to review body worn camera footage of the incident in an attempt to cover it up, and found Plaintiff guilty after he walked out because "she had already made her mind up to find [him] guilty." *Id*. at 31–32. Plaintiff attaches as exhibits copies of medical reports, disciplinary records and staff complaints containing the Defendants' statements referenced in the Complaint. ECF No. 1-1 at 1–122. Plaintiff alleges that Eustaquio, Louie, Mansfield, Solano, Segovia, Cuevas, Romo, Olmos, Ylv, Flores, Velasco, Romero, Galindo, Mansfield and Dr. Blaisdell all committed perjury in those documents and participated in "Green Wall practices, code of silence and filed fraudulent reports" to cover up for each other. ECF No. 1 at 33–34.

### C.    Discussion

#### 1.  Incident on April 13, 2025

Plaintiffs cannot state a federal constitutional claim arising solely from allegations of negligence or lack of due care in maintaining a hazardous condition or failing to post a warning sign. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (stating that the standard for failure to protect a prisoner from unsafe conditions "describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety"); *see Levy v. Department of Corrections of Washington*, 2013 WL 1855854, at *2 (W.D. Wash. May 1, 2013) (finding no constitutional violation from trip and fall in sprinkler hole on recreation yard); *Coleman v. Sweetin*, 745 F.3d 756, 764 n.7 (5th Cir. 2014) (collecting cases and noting "prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations"). A prison official's failure to protect an inmate from a dangerous prison condition rises to the level of a constitutional violation

26cv0229-WQH (DEB)

when two requirements are met: (1) the alleged failure to maintain safe conditions is sufficiently serious; and (2) the prison official is deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official must know of and disregard an excessive risk and fail to take reasonable steps to abate the risk. *Id*. at 837.

If Plaintiff wishes to proceed with his 42 U.S.C. § 1983 claim based on his fall as a result of a dangerous condition, he must set forth facts which plausibly allege a Defendant was aware of facts from which they could draw an inference that the trench posed a substantial risk of serious injury to Plaintiff *and* actually drew such an inference, as opposed to alleging in conclusory fashion that they knew or should have known it posed a danger. *Id*. at 834–35. Plaintiff must also set forth facts showing he suffered a sufficiently serious injury, as opposed to conclusory allegations that he suffered injuries which "required him to go to an outside hospital." *Id*. at 834–38; *Iqbal*, 556 U.S. at 678 (conclusory statements do not satisfy the plausibility standard required to state a claim for relief).

### 2. Incident on August 28, 2025

The Eighth Amendment to the U.S. Constitution forbids prison officials from "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). It "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832. The Eighth Amendment also imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Prison officials have a duty to intercede when fellow officers violate the constitutional rights of a prisoner, but liability does not attach where officers do not have a "realistic opportunity" to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000).

Nevertheless, "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners." *LeMaire v. Maas*, 12 F.3d 1444, 1458 (9th Cir. 1993); *Simmons v. G. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022) ("[P]rison officials should be accorded 'wide-ranging

deference' when they are exercising their judgment to maintain prison safety," because "[i]n the specialized context of prison operations, the use of force can be a 'legitimate means for preventing small disturbances from becoming dangerous to other inmates or the prison personnel.'") (citations omitted); *Whitley*, 475 U.S. at 321–22 (prison officials are entitled to deference when a prisoner challenges a use of force).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Whitley*, 475 U.S. at 327). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 9. However, "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action," and "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9).  The extent of an injury suffered by an inmate is one factor that may determine "whether the use of force could plausibly have been thought necessary" in the situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321; *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove . . . violates the [federal Constitution].")

Plaintiff alleges he was walking across the rotunda and was nearly at the door when Defendant Viloria, "to intentionally annoy, harass, discriminate, terrorize and intimidate Plaintiff, an elderly, walker-using ADA, African American, based solely on the color of his skin tone, came into the A-3 rotunda with no legitimate cause or emergency situation in progress," and—in violation of prison policies, practices, regulations and rules—"asked Plaintiff to cuff up, to which he complied without being a threat and not resisting." (ECF

26cv0229-WQH (DEB)

No. 1 at 7.) Those allegations are conclusory with respect to Viloria's intent, including whether Viloria took those actions because of Plaintiff's race. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the plausibility standard required to state a claim for relief.) Attached to and incorporated into the Complaint by reference are exhibits related to staff complaints and disciplinary proceedings containing witness descriptions of the encounter, including Plaintiff's.[1]  (ECF No. 1-1 at 2–47.)

The allegations in the Complaint are too vague and conclusory to plausibly allege that the use of force Viloria applied to Plaintiff "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. Even accepting Plaintiff's allegation that Viloria and the other officers fabricated their accounts of the incident, and setting aside Plaintiff's wholly conclusory allegation as to Viloria's intent in initiating the incident, Plaintiff's description of Viloria's action consists of Viloria handcuffing Plaintiff after he refused to yield to Viloria, yelling for him to stop resisting, falling on top of him, and pulling up on his jacket while pushing his arm in the opposite direction, as well as the vague allegations of "injuries to his left shoulder, right shoulder and both sides and back of his neck." (ECF No. 1 at 8.)

---

[1]  In screening the Complaint, the Court considers its attached exhibits. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . [inquiring] whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.") (internal citation omitted); *Watison*, 668 F.3d at 1112 ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."); *Wilhelm*, 680 F.3d at 1121 (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")

26cv0229-WQH (DEB)

Those allegations do not plausibly allege an Eighth Amendment violation because "[n]ot every push or shove . . . violates the [federal Constitution]." *Graham*, 490 U.S. at 396; *Wilkins*, 559 U.S. at 38 ("Not every malevolent touch by a prison guard gives rise to a federal cause of action.") Plaintiff has not plausibly alleged Viloria's actions or that of Galindo in placing him in leg restraints "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur," because the allegations are conclusory and lack specific facts showing Viloria did not believe it was necessary to restrain Plaintiff, what actions Plaintiff took in response, why Plaintiff believed emergency medical staff needed to be summoned immediately, why he believed other officers needed to intervene and whether they had time to prevent the alleged use of excessive force, and the extent and severity of his injuries. *See Whitley*, 475 U.S. at 321 (the extent of injury is a factor that may determine "whether the use of force could plausibly have been thought necessary"); *Iqbal,* 556 U.S. at 678 (stating that "mere possibility of misconduct" falls short of meeting the plausibility standard).

The allegations against Defendants Eustaquio, Cuevas, Romo, Olmos, Ylv, Flores, Velasco, Romero, Segovia, Mansfield, Solano, Galindo and Louie for failing to intervene and failing to summon emergency medical staff, fail to state a claim because Plaintiff has not plausibly alleged an Eighth Amendment violation arising from his encounter with Viloria. If Plaintiff wishes to proceed with excessive use of force or failure to protect claims against these Defendants, he must set forth non-conclusory factual allegations which plausibly allege their actions or failure to act "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur," *Whitley*, 475 U.S. at 321, and plausibly showing that they were not taking "appropriate measures to maintain prison order and discipline and protect staff and other prisoners." *LeMaire*, 12 F.3d at 1458.

Plaintiff next alleges that he was denied medical care because Defendant Nurse Hernandez noted on the incident medical report he had suffered injuries, but "in an attempt to cover up Green Wall practices and to invoke the code of silence . . . manufactured a

26cv0229-WQH (DEB)

fraudulent medical report of injury pretending to be a TTA examining nurse [and] contended no injuries were sustained," contended that Plaintiff needed no stronger pain medication than what he was already receiving, and falsely stated that Plaintiff reported that "custody used force on him and he fell to the ground and hit his whole left side." (ECF No. 1 at 27-29.) Plaintiff alleges that Defendant Dr. Blaisdell declined to see him, and denied and delayed x-rays, CAT scans, and other necessary medical tests needed to determine the extent of his injuries. *Id*. at 30.

The Eighth Amendment's prohibition on the infliction of cruel and unusual punishment creates an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101-03 (1976). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety;" he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Wilhelm*, 680 F.3d at 1122 (holding that a prisoner plausibly alleges an Eighth Amendment violation where a failure to treat a serious medical need "could result in further significant injury or the unnecessary and wanton infliction of pain" and "the defendant's response to the need was deliberately indifferent.") "[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain." *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference can also be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). However, allegations of inadequate medical treatment, medical malpractice, or

26cv0229-WQH (DEB)

even gross negligence by themselves do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference) (quoting *Estelle*, 429 U.S. at 106 (an inadvertent failure to provide medical care, negligence or malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim)).

Although Plaintiff sets forth specific facts in the Complaint describing his long-standing medical conditions, including that since a recent fall he has reported lower back pain radiating down his legs, (ECF No. 1 at 29), the allegations that Hernandez pretended to be a TTA nurse and filed a false medical report and that Defendant Dr. Blaisdell denied him necessary medical care are too conclusory to plausibly allege anything more than a disagreement over the type of medical care Plaintiff thought necessary, particularly in light of Plaintiff's non-specific allegations of what injuries he suffered during the incident. *See Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."); *Toguchi*, 391 F.3d at 1058 (a disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983].")

If Plaintiff wishes to proceed with an Eighth Amendment claim for denial of medical care, he must set forth specific factual allegations which plausibly suggest a Defendant knew of and disregarded an excessive risk to his health by showing they were "aware of facts from which the inference could be drawn" that he faced "a substantial risk of serious harm" by the treatment they provided, and *actually* drew that inference when allegedly denying him medical care, including what care he needed but was refused. *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" falls short of the plausibility standard).

Finally, Plaintiff alleges Defendant Reece "bullied Plaintiff at the RVR rules violation report hearing" which was held as a result of Viloria's allegedly fraudulent disciplinary report, by refusing to review body worn camera footage of the incident in an attempt to cover it up. *Id*. at 31–32. A prisoner is entitled to procedural protections when charged with a disciplinary violation, but only "when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. at 1077–78. A prisoner must show he was deprived of a liberty interest and that the procedures used were not constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989).

Plaintiff has not plausibly alleged he was deprived of a protected liberty interest because he has not provided any factual allegations describing the disciplinary proceedings or its consequences, other than that he was found guilty and walked out of the hearing after the hearing officer refused his request to review video footage, and the exhibits do not include sufficient information. *Sandin*, 515 U.S. at 486–87. Plaintiff cannot state a due process claim arising solely from an allegedly false disciplinary charge because a prisoner does not have a constitutionally guaranteed right to be free of a disciplinary charge based on false allegations. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)) (allegation of false evidence planted by prison guard does not state a constitutional claim where due process protections are provided); *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) (allegations that an RVR included false information does not state a claim under section 1983); *see Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984) (noting that as long as a prisoner is afforded procedural due process in a hearing, allegations of false or fabricated charges in a disciplinary proceeding fail to state a claim under § 1983).

For all the foregoing reasons, Plaintiff's Complaint is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.

**D.    Leave to Amend**

In light of Plaintiff's pro se status, the Court grants leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

**III.    Conclusion and Orders**

Good cause appearing, the Court:

1.    **GRANTS** Plaintiff's first Motion to Proceed IFP (ECF No. 2) and **DENIES** as moot his second Motion to Proceed IFP (ECF No. 5).

2.    **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $7.03 initial partial filing fee and collect the $342.97 balance of the filing fee by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4.    **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,

26cv0229-WQH (DEB)

896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.") If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  March 26, 2026

_____
Hon. William Q. Hayes
United States District Court

26cv0229-WQH (DEB)